Scott A. Brown, SBN 177099
BROWN | POORE LLP
3100 Oak Road, Suite 100
Walnut Creek, California 94597
Telephone: (925) 943-1166
sbrown@bplegalgroup.com

Attorneys for Plaintiff
MATTHEW HROMATKA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| MATTHEW HROMATKA, | Case No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES, EQUITABLE AND/OR INJUNCTIVE RELIEF** |
| v. | INTENTIONAL MISREPRESENTATION; |
| CLEAR WATER COMPLIANCE, LLC dba CLEAR WATER SERVICES, and DOES 1 to 10, | FALSE PROMISE; NEGLIGENT MISREPRESENTATION; BREACH OF CONTRACT; PROMISSORY ESTOPPEL; ESTOPPEL BY CONDUCT; NON-PAYMENT OF WAGES (LABOR CODE SECTION 200 ET. SEQ.); VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5; WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY |
| Defendants. | |
| | **JURY TRIAL DEMANDED** |

Plaintiff MATTHEW HROMATKA complains and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff MATTHEW HROMATKA ("Plaintiff") is, and at all relevant times hereto, has been a resident of the State of California.

2. Plaintiff is informed and believes and thereby alleges that Defendant CLEAR WATER COMPLIANCE, LLC dba CLEAR WATER SERVICES ("Defendant" or "Clear Water") is a limited liability company with its corporate headquarters and principal place of business in Everett, Washington. Plaintiff is further informed and believes that this limited liability company is comprised of the following members, all of whom reside in and are citizens of the state of Washington at the relevant times: Lisa Graham, Cory Shelest, Chris Augustine, and Nate Holloway.

3. This Court has jurisdiction over this action in that diversity of citizenship exists between the parties pursuant to 29 U.S.C. Section 1332.

4. This Court has venue over this action in that Defendant employed Plaintiff within this judicial district in the State of California.

5. Plaintiff is unaware of the names of Defendants identified herein as DOES 1-10, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes and thereon alleges, that Defendants sued herein as DOES are responsible in some manner for the practices, acts, conduct, and occurrences alleged herein, as either actual perpetrators or co-conspirators, aiders and abettors, officers, directors, and/or managing agents with the knowledge, control, authority, direction, and/or ratification of the other Defendants, and each of them. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of the DOE Defendants, and the roles they played, once their identities and/or manner of participation in the wrongful conduct herein described is ascertained.

6. Unless otherwise indicated as acting in individual capacity, Plaintiff is informed and believes, and thereby alleges that each of the defendants herein were at all times relevant hereto, the agents, representatives, servants and employees of the remaining defendants, and was

acting at least in part within the course and scope of such relationship, and that the wrongful acts alleged herein were committed by such defendants, and each of them.

## FACTUAL BACKGROUND

**A. Plaintiff's employment with BakerCorp.**

7. Plaintiff spent more than 20 years working in the equipment rental and service industry, primarily for environmental filtration systems. In 2012, he started with BakerCorp as an Assistant Branch Operations Manager in Pittsburg, California. He was an experienced and capable manager who oversaw equipment rental and service to petrochemical plants, manufacturing sites, waste water treatment facilities, and construction projects. Plaintiff rose through the ranks for this industry leading employer, until he became the Branch Manager just three years after he was hired.

8. During Plaintiff's tenure with BakerCorp he obtained many accommodations and achievements including increasing annual revenue from $6,000,000 to $15,000,000, the second highest branch revenue in the country. His office received awards for safety as well as the highest EBITDA and top revenue producing branch in the country from 2015-2018.

9. In January 2018, Plaintiff received a base salary of $175,000 including a bonus potential of $35,000. Plaintiff was also entitled to profits only stock options of BakerCorp stock which had not vested during his employment.

**B. Clear Water lured Plaintiff away from BakerCorp with promises of an ownership interest.**

10. In January of 2018, Defendant's President, Nate Holloway, approached Plaintiff about a job with Clear Water. Mr. Holloway initially offered Plaintiff a position with Defendant with a starting annual salary of $175,000. Plaintiff explained that the offer was insufficient because it did not include an ownership interest which he would be giving up by leaving BakerCorp. Plaintiff further stated he would need to receive an ownership interest in Clear Water as part of his compensation package to justify leaving BakerCorp. Plaintiff and Mr. Holloway had several conversations about providing Plaintiff with an ownership structure based upon

-3-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
HROMATKA V. CLEAR WATER SERVICES

profits and capital (shares converted to equity or a percentage in the company). Defendant promised to provide Plaintiff with a two part ownership plan, based upon (1) profits generated; and (2) percentage equity.

11. On February 25, 2018, Mr. Holloway confirmed in writing that "A membership interest will be granted to you over a period of time" and detailed a 1-4 year framework for vesting.

12. On February 27, 2018, Mr. Holloway provided Plaintiff with a revised offer which included the two part ownership plan. The first was based upon the following profits only ownership interest:

> 1% membership interest will be provided to you, provided you remain a good standing employee of the company, every six (6) months an additional 0.5% interest will be granted until a maximum of 4% profits only interest is achieved.

13. Second, Defendant offered Plaintiff the opportunity to obtain a capital or straight equity interest in Clear Water. The capital interest was consistent with what Mr. Holloway stated that he received, that is, equity measured by a percentage in the value of the entire company (i.e., 4% of the value of the company at the end of 2022). For example, Mr. Holloway explained to Plaintiff that Clear Water received a tender offer in 2017 for approximately $13,000,000. Under this scenario with Clear Water valued at $13,000,000, a 4% equity interest in Clear Water would be at $520,000.

14. Based on Defendant's representations and promises regarding an ownership interest in Clear Water, Plaintiff left BakerCorp and accepted employment with Clear Water.

15. BakerCorp was purchased by United Rental approximately 6-8 months after Plaintiff left its employment. The purchase constituted a "qualifying event" such that all of BakerCorp's stock was deemed vested for its shareholders.

**C. Plaintiff's achievements at Clear Water.**

16. Plaintiff started with Clear Water in March 2018 as the California Regional Manager. He was assigned to build a competitive business model to expand the California

-4-
COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
HROMATKA V. CLEAR WATER SERVICES

markets. Plaintiff's first task involved creating a business plan for the Board of Directors with three growth options (organic, moderate, and large fund) and a cost/risk analysis. When Plaintiff started at Clear Water, they had a $500,000 revenue capture operation, no shop, and two project managers working from home. The California operation was being run out of the Washington headquarters.

17. Shortly after Plaintiff joined Clear Water he located a 10,000 square foot shop and 2,500 square foot office in Rodeo. He hired 11 operational and administrative staff and structured a sales and marketing team. Plaintiff expanded the California markets for Clear Water without any annual fiscal loss. He increased annual revenue for his office from $500,000 to $5,000,000. His office did not suffer any lost time due to accidents and maintained a perfect safety incident record.

**D. Plaintiff's complaints of non-payment of stock.**

18. In early 2020, Plaintiff discovered that he had not received any notice granting him equity in Clear Water. Plaintiff complained to Defendant that since two years of his employment had passed, he was entitled to a 2% ownership interest as promised. Mr. Holloway ignored Plaintiff's complaint. When Plaintiff persisted, Mr. Holloway represented that a "new operating agreement" with higher ownership interests was being prepared for Plaintiff. He represented that the operating agreement was being revised in response to an ownership change. However, no operating agreement was forthcoming. Plaintiff continued to complain over the next two years about not receiving confirmation of his ownership interest.

19. On or about January 31, 2022, Plaintiff requested, in writing, a meeting with the Board of Directors to discuss why the shares of Clear Water and options for equity that were negotiated before his employment had not been awarded. Defendant did not respond.

**E. Defendant terminated Plaintiff on March 14, 2022 and refused to pay Plaintiff's vested stock shares.**

20. Instead, on or about March 14, 2020, Defendant terminated Plaintiff's employment and health care benefits, and refused to redeem Plaintiff's promised shares of equity, which had fully vested over the last 4 years of his employment with Clear Water.

## FIRST CAUSE OF ACTION

(Intentional Misrepresentation)

21. Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

22. Clear Water, through President Nathan Holloway, made various representations to Plaintiff including but not limited to:

   a. Plaintiff will earn significant income through Clear Water's stock value increases, if he leaves his previous employment at BakerCorp;

   b. Clear Water has a legitimate, approved ownership plan which is available to Plaintiff;

   c. Plaintiff will receive an ownership interest in the company after one year of employment;

   d. The ownership interest is based upon a profits only interest and/or capital interest;

   e. The profits only interest consists of a 1% membership interest after one year of employment in good standing, to be increased by 0.5% interest every 6 months, until a maximum of 4% profits only interest is achieved;

   f. The capital interest will be conveyed to Plaintiff after one year of employment.

   g. Plaintiff will earn significant income through Clear Water's stock value increases, if he continued his employment at Clear Water.

23. Each of these representations was false.

24. Clear Water did not intend to grant Plaintiff a membership interest in the form of stock shares or ownership percentage and knew that the above representations were false when they were made, and/or Clear Water made these representations recklessly and without regard for their truth.

25. Clear Water intended that Plaintiff rely on these representations.

26. Plaintiff reasonably relied upon Defendant's representations in that he left a competitive salary, bonus, and significant ownership interest with his previous employer, BakerCorp, to accept Defendant's offer of employment and opportunity for an ownership interest.

27. Plaintiff's reliance on Clear Water's representations was a substantial factor in causing his harm. Had he known that Clear Water would not provide him with an ownership interest he would not have left his lucrative and secure position at BakerCorp. Further, Plaintiff worked at Clear Water under the false premise that he was continually vesting shares consistent with Clear Water's promises. Had he learned before his termination that these representations were false, he would not have stayed at Clear Water.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

29. Defendant's acts were intentional, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress. Defendant's acts were done in disregard of the risk of severe emotional harm to Plaintiff, entitling Plaintiff to punitive damages.

## SECOND CAUSE OF ACTION

(False Promise)

30. Plaintiff realleges and incorporates the previous paragraphs of this Complaint as though fully set forth herein.

31. Defendant promised Plaintiff an ownership interest, as described above, if he left his prior employment for Defendant. This promise was important to the transaction.

32. Defendant did not intend to perform this promise when it made it.

33. Defendant intended that Plaintiff rely on this promise.

34. Plaintiff reasonably relied upon Defendant's representations in that he left a competitive salary, bonus, and significant ownership interest with his previous employer, BakerCorp, to accept Defendant's offer of employment and opportunity for an ownership interest.

35.  Plaintiff's reliance on Clear Water's representations was a substantial factor in causing his harm.  Had he known that Clear Water would not provide him with an ownership interest he would not have left his lucrative and secure position at BakerCorp.  Further, Plaintiff worked at Clear Water under the false premise that he was continually vesting shares consistent with Clear Water's promises.  Had he learned before his termination that these representations were false, he would not have stayed at Clear Water.

36.  As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

37.  Defendant's acts were intentional, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress.  Defendant's acts were done in disregard of the risk of severe emotional harm to Plaintiff, entitling Plaintiff to punitive damages.

## THIRD CAUSE OF ACTION

(Negligent Misrepresentation)

38.  Plaintiff realleges and incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein.

39.  Defendant represented to Plaintiff that important facts were true as describe above, that is, Plaintiff would be entitled to an ownership interest and equity in Clear Water if he left his employment to join Clear Water.

40.  Defendant's representation was not true and it had no reasonable grounds for believing the representation was true when it made it.

41.  Clear Water intended that Plaintiff rely on these representations.

42.  Plaintiff reasonably relied upon Defendant's representations in that he left a competitive salary, bonus, and significant ownership interest with his previous employer, BakerCorp, to accept Defendant's offer of employment and opportunity for an ownership interest.

43.  Plaintiff's reliance on Clear Water's representations was a substantial factor in causing his harm.  Had he known that Clear Water would not provide him with an ownership

COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
HROMATKA V. CLEAR WATER SERVICES

interest he would not have left his lucrative and secure position at BakerCorp. Further, Plaintiff worked at Clear Water under the false premise that he was continually vesting shares consistent with Clear Water's promises. Had he learned before his termination that these representations were false, he would not have stayed at Clear Water.

44. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

(Breach of Contract)

45. Plaintiff incorporates by reference the previous paragraphs this Complaint as though fully set forth herein.

46. On March 2, 2018, Plaintiff signed an Offer Letter Clear Water presented to him.

47. The essential terms of the Offer Letter provide that he was entitled to a "1% membership interest" after one year of employment, plus an additional 0.5% interest every 6 months, "until a maximum of 4% profits only interest is achieved." The Offer Letter also confirms Plaintiff may have the opportunity to invest in the member's capital interest in the company, one year from his start date.

48. Plaintiff performed all, or substantially all, of the significant things that the contract required him to do, including providing continuous service to Clear Water from his start date in March 2018 until Clear Water wrongfully terminated him as described herein, on or around March 14, 2022. All conditions required by the contract for Defendant's performance had occurred or been excused.

49. Clear Water breached the contract by failing to provide him the value of a 4% membership interest.

50. Plaintiff was harmed by Clear Water's breach. Plaintiff accepted the position with Clear water, leaving behind his prosperous and stable position at BakerCorp, based on Clear Water's promise that he would receive equity in Clear Water. Plaintiff continued to work for Clear Water under the false premise that he was continually accruing shares.

COMPLAINT FOR DAMAGES, EQUITABLE, AND/OR INJUNCTIVE RELIEF
HROMATKA V. CLEAR WATER SERVICES

## FIFTH CAUSE OF ACTION

(Promissory Estoppel)

51. Plaintiff incorporates by reference all the allegations contained in this Complaint.

52. Defendant made a sufficiently clear and definite promise to provide Plaintiff with an ownership interest to join Clear Water and remain continuously employed. Plaintiff relied upon this promise to his substantial detriment by remaining employed at Clear Water and foregoing other employment and opportunities. Defendant breached this contract by denying its promise to pay Plaintiff a profits based interest for each year Plaintiff was employed as well as an equity based interest in Clear Water at Plaintiff's termination.

53. As a result, Plaintiff seeks all available relief and damages, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Estoppel by Conduct)

54. Plaintiff incorporates by reference the previous paragraphs of this Complaint as though fully set forth herein

55. Defendant by its representations and conduct induced Plaintiff to believe that an ownership interest would be provided to him, that the representations and conduct were material inducements to accept employment and remain in Defendant's employ, that Plaintiff relied on such representations and conduct and on the award of an ownership interest, and that Defendant was estopped by its conduct from denying a promise to pay Plaintiff a profits based interest each year as well as an equity based interest at the time of his termination.

56. As a result, Plaintiff seeks all available relief and damages, in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

(Non-payment of wages – Labor Code section 200 et. seq.)

57. Plaintiff incorporates herein by reference all the allegations contained in this complaint.

58. Labor Code sections 201 and 202 require Defendant to pay an employee all wages due immediately upon discharge, or within 72 hours of quitting without notice. Labor Code section 203 provides that where an employer willfully fails to make such timely payment, the employer must, as a penalty, continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days' wages.

59. Agreements to provide stock, restricted stock units, or other ownership interests constitute wages under the California Labor Code.

60. Plaintiff has separated from employment with Defendant without being paid his vested shares that are due to him within the time required by Labor Code sections 201 and 202. Defendant's failure to pay these wages has been and continues to be willful.

61. As a result of Defendant's conduct, Plaintiff is entitled to waiting time penalties in the amount of up to 30 days' wages under Labor Code section 203, together with interest and reasonable attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

(Violation of California Labor Code Section 1102.5)

62. Plaintiff incorporates by reference the previous paragraphs of this Complaint.

63. California Government Code §1102.5, *et. seq* provide that it is an unlawful employment practice for an employer or any other person to retaliate against an employee for disclosing conduct that he reasonably believes is a violation of the law.

64. Plaintiff reported his reasonable belief that Clear Water's failure to award him profit sharing and equity in the company constituted a violation of state and/or federal regulations, including fraud. He disclosed these violations multiple times to the President, Nate Holloway, among others.

65. In acting above, Defendant violated Section 1102.5, when it terminated Plaintiff's employment, and took adverse actions against Plaintiff, based upon his complaints of unpaid profits and equity.

66. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

67. Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputation and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to their damage in an amount according to proof.

68. The acts of Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiffs and to cause Plaintiff mental anguish, anxiety, and distress. Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code §3294, entitling Plaintiff to punitive damages.

## NINTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policies)

69. Plaintiff incorporates herein by reference the previous paragraphs of this complaint as fully set forth herein.

70. It is the fundamental public policy of the State of California that employers, like the Defendant, shall not retaliate against an employee for reporting complaints about compensation structures, including profit sharing and equity awards. These fundamental public policies are embodied in the California Civil Code §§ 1709-1710, California Labor Code §§ 200 et. seq., § 1102.5, and other federal and state laws and regulations.

All of these policies were fundamental at the time of the adverse employment actions. The violation of each of these policies was a substantial motivating reason for Plaintiff's discharge. In acting as alleged herein, Defendant wrongfully terminated Plaintiff in violation of these statutes, regulations, and public policies.

As a direct and legal result of Defendant's conduct, Plaintiff has suffered loss of employment, indignity, great humiliation and emotional distress manifesting in physical symptoms.

Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, significant reputational and professional injury, loss of promotional opportunities and other employment benefits, lost wages, attorneys' fees, medical expenses, future earnings and benefits, cost of suit, humiliation, embarrassment and anguish, all to his damage in an amount according to proof.

The acts of Defendant as alleged herein, were intentional, outrageous, despicable, oppressive, fraudulent, and done with ill will and intent to injure Plaintiff and to cause Plaintiff mental anguish, anxiety, and distress. The acts of the Defendant were further committed by managing agents, officers, or directors of Defendant, or ratified by it at a corporate level. Defendant's acts were done in conscious disregard of the risk of severe emotional harm to Plaintiff and with the intent to injure Plaintiff, constituting oppression, fraud, malice under California Civil Code § 3294, entitling Plaintiff to punitive damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them as follows:

1. For general damages in an amount according to proof;
2. For special damages in an amount according to proof;
3. For prejudgment interest in an amount according to proof;
4. For equitable, declaratory, and/or injunctive relief including reinstatement;
5. For statutory penalties;
6. For reasonable attorney's fees and cost of suit pursuant to applicable provisions of law, including Labor Code sections 218.5, 1102.5 and Code of Civil Procedure section 1021.5;
7. For such other and further relief as the court may deem proper; and,

8. For punitive or exemplary damages;

9. **Plaintiff demands a trial by jury.**

Dated: March 3, 2023                     BROWN | POORE LLP

                                         By: _//s// Scott A. Brown_____
                                             Scott A. Brown
                                             Attorneys for Plaintiff